Filed 8/28/13  In re A.S. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re A.S., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E058492 |
| Plaintiff and Respondent, | (Super.Ct.No. J245823) |
| v. | OPINION |
| M.S., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Christopher B. Marshall, Judge.  Affirmed.

Mitchell Keiter, under appointment by the Court of Appeal, for Defendant and Appellant.

Jean-Rene Basle, County Counsel, Dawn M. Messer, Deputy County Counsel, for Plaintiff and Respondent.

1

M.S. appeals an order terminating her parental rights to her daughter, A.S. She asserts only that the court erred in not finding that the beneficial parental relationship exception to the preference for adoption applied.

We will affirm the judgment.

## HISTORY

Four-year-old A.S. was detained after she was slightly injured when a car struck the cement encasement surrounding a dumpster in which A.S. and her mother were digging for food. A.S. was taken by ambulance to Loma Linda University Medical Center. M.S. was uncooperative both with emergency personnel at the hospital and with law enforcement. Hospital staff believed that M.S. showed signs of untreated mental illness. She was involuntarily committed to Arrowhead Regional Medical Center for observation. M.S. was not able to identify any family members who could care for her daughter. A.S was placed in confidential foster care.

M.S.'s brother told the social worker that M.S. had been "normal" until 2006, but then she "just lost it." M.S. did not believe she had any mental health issues, however, and she did not follow her family's advice to seek professional help. M.S.'s untreated mental illness and her bizarre behavior resulted in the termination of her parental rights to another daughter in 2008, and her two other children were in the legal custody of their father, although by the time of the jurisdiction report, those children were living with

maternal relatives in San Bernardino while their father was incarcerated.[1]  In 2012, M.S. had been staying at a homeless shelter in San Diego.  She had come to San Bernardino to attend to a traffic ticket and was staying with someone in Rialto or Fontana.

M.S. had one misdemeanor conviction for petty theft in 1995.  In 1996, she was arrested for petty theft, and in 2006 she was arrested for child cruelty and evading a police officer.  The record does not reflect the disposition of the latter two incidents.

A petition pursuant to Welfare and Institutions Code section 300[2] was filed on September 5, 2012, alleging as to M.S. failure to protect because of mental illness, a history of alcohol abuse,[3] unsafe lifestyle and lack of parenting skills and termination of parental rights as to a half sibling of A.S.  A.S. was ordered detained in the confidential foster home.  Supervised visitation was ordered upon M.S.'s release from the hospital.

M.S. was discharged from Arrowhead Regional Medical Center with a diagnosis of psychosis NOS (not otherwise specified), plus another diagnosis which was not legible on the discharge papers M.S. provided to the social worker.  She was discharged with Risperdal, Cogentin and iron pills.  She told the social worker that she was taking her medications but that she did not know what they were for.  M.S. continued to deny that

_____

[1]  The father of those children is not A.S.'s father.  A.S.'s alleged father was not located during the dependency proceedings and is not a party to this appeal.

[2]  All further statutory citations refer to the Welfare and Institutions Code.

[3]  The social worker reported to the court that this allegation was unfounded and the court found it not true.

3

she had mental health issues and displayed no insight into why her elder daughter and now A.S. had been removed from her care.

On the date set for the jurisdiction/disposition hearing, the court appointed a guardian ad litem for M.S. The matter was then continued.

During two visits conducted before the jurisdiction hearing, A.S. became upset when it was time to leave. She clung to her mother, crying and saying she did not want to go. M.S. refused to cooperate with the social worker's instructions to turn the child over to the foster mother and prolonged the upset to A.S. During a third visit, M.S. left the building with A.S. after the visit was over, and assistance from security was necessary to get her to release A.S. to the social worker.

The social worker recommended suspending visitation because the visits were emotionally damaging to A.S. After visitation was suspended, A.S.'s behavior and emotional status improved. At a pretrial settlement conference held on October 22, 2012, the court suspended visitation pending the jurisdiction/disposition hearing. On October 22, 2012, A.S. was placed with M.M., a nonrelated extended family member.

In an addendum jurisdiction/disposition report, the social worker recommended that no reunification services be provided to M.S. As of the date of the report, M.S. had apparently not made any effort to obtain psychiatric treatment.

At the jurisdiction/disposition hearing on November 6, 2012, after hearing testimony from M.S. and the social worker, the court found jurisdiction under section 300, subdivisions (b) and (j) as to M.S. and under section 300, subdivision (g) as to the alleged father. The court denied reunification services pursuant to section 361.5,

4

subdivision (b)(10) and (b)(11).  The court also denied further visitation, finding that visitation was detrimental to A.S.  The court found that relative assessment had been completed and placed A.S. with M.M.  The court set the section 366.26 hearing for March 6, 2013.  The court notified M.S. of her writ rights.  M.S. did not file a writ petition.  The court found that the Indian Child Welfare Act (25 U.S.C. § 1911 et seq.) does not apply.

On November 19, 2012, M.S. filed a section 388 petition asking the court to order visits with A.S.  After a hearing, the court denied the petition, finding that M.S. did not meet her burden to show changed circumstances and that granting the petition would not be in A.S.'s best interest.

In the section 366.26 report, the social worker recommended terminating parental rights and implementing a permanent plan of adoption.  M.M. and her boyfriend of 25 years wanted to adopt A.S.  A.S. had developed a strong bond with her prospective adoptive parents and thought that staying with them forever was a good thing.  She told the social worker, however, that she still missed her mother.

At the contested section 366.26 hearing on April 8, 2013, M.S. testified that she had not visited A.S. since her visitation had been suspended in October 2012.  She testified that during visits, A.S. would hug her and tell her that she loved her, and that at the end of the visits, A.S. would cry and tell her that she wanted to come home.  The social worker testified that A.S. was adjusting to her new home and was bonding with her prospective adoptive parents.  A.S. had not told the social worker since February 2013 that she missed her mother.  The social worker testified that M.M., the prospective

5

adoptive mother, had told her that A.S. "really [didn't] ask about her mom." According to the report, M.M. had told A.S. that it was fine to talk about her birth mother and to love and miss her.

The prospective adoptive parents received a positive assessment. They understood the importance of sibling relationships and had arranged for visits between A.S. and her two half siblings who were living with maternal relatives. The social worker also planned to facilitate visits between A.S. and her other half sister, who had been adopted by her paternal grandmother.

The court terminated parental rights and ordered adoption as the permanent plan. The court found clear and convincing evidence that A.S. would be adopted. The court found that the beneficial parental relationship exception did not apply because M.S. had not had regular visits with A.S. and had not shown that she occupied a parental role in A.S.'s life, in that A.S. had not recently asked about her and was in a stable home.

DISCUSSION

M.S. HAS FAILED TO SHOW THAT THE BENEFICIAL PARENTAL

RELATIONSHIP EXCEPTION APPLIES

After termination of reunification services or, as in this case, an order that no reunification services be provided, the focus of juvenile dependency proceedings is on the child's needs, including his or her need for a stable, permanent home. Consequently, the statutory preference for a permanent plan for a dependent child is adoption, and the court must terminate parental rights and order the child placed for adoption unless one of

6

the exceptions provided for in section 366.26, subdivision (c) applies. (§ 366.26, subd. (c); *In re Celine R.* (2003) 31 Cal.4th 45, 53.)

Section 366.26, subdivision (c)(1)(B) provides that even if the court finds that the child is adoptable and that there is a reasonable likelihood that the child will be adopted, the court may nevertheless decline to terminate parental rights if it finds a "compelling reason for determining that termination would be detrimental to the child due to one or more of the following circumstances: [¶] (i) The parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship."

In order to prevail in asserting the exception, the parent must demonstrate both that he or she has maintained regular visitation and contact with the child and that a continued parent-child relationship would "promote[] the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents. . . . If severing the natural parent/child relationship would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated." (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575; see *In re S.B.* (2008) 164 Cal.App.4th 289, 297.)

Courts have applied different standards of review to challenges to juvenile court findings that the parental relationship exception does not apply. In *In re Bailey J.* (2010) 189 Cal.App.4th 1308, the court explained that there are two components to the juvenile court's finding: (1) whether a beneficial relationship exists, and (2) whether there is a

compelling reason for determining that termination of parental rights would be detrimental to the child. Different standards of review apply to the two components. (*Id.* at pp. 1314-1315.)

The existence of a beneficial parental relationship is a factual issue, subject to review on appeal under the substantial evidence rule. (*In re Bailey J.*, *supra*, 189 Cal.App.4th at p. 1314.)

When the party with the burden of proof appeals, contending that the trier of fact has erroneously concluded that that party failed to meet his or her burden, the question on appeal "becomes whether the evidence compels a finding in favor of the appellant as a matter of law." (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1528.) With respect to the section 366.26, subdivision (c)(1)(B) exceptions, the burden of proof is on the party seeking to establish one of the exceptions. (*In re I.W.*, at p. 1527.) Accordingly, "a challenge to a juvenile court's finding that there is no beneficial relationship amounts to a contention that the 'undisputed facts lead to only one conclusion.' [Citation.]" (*In re Bailey J.*, *supra*, 189 Cal.App.4th at p. 1314.) Here, the evidence does not lead only to one conclusion.

"The factors to be considered when looking for whether a relationship is important and beneficial are: (1) the age of the child, (2) the portion of the child's life spent in the parent's custody, (3) the positive or negative effect of interaction between the parent and the child, and (4) the child's particular needs. [Citation.] Interaction between natural parent and child will always confer some incidental benefit to the child. The significant attachment from child to parent results from the adult's attention to the child's needs for

physical care, nourishment, comfort, affection and stimulation.  [Citation.]  The relationship arises from day-to-day interaction, companionship and shared experiences.  [Citation.]  The exception applies only where the court finds regular visits and contact have continued or developed a significant, positive, emotional attachment from child to parent.  [Citation.]  Evidence of frequent and loving contact is not sufficient to establish the existence of a beneficial parental relationship." (*In re Bailey J.*, *supra*, 189 Cal.App.4th at pp. 1315-1316, internal quotation marks omitted for clarity.)

Here, M.S. contends that the evidence supports application of the exception because A.S. had spent more than 90 percent of her life in her care, because A.S. knew her as her mother, and because they shared a bond which A.S. wanted to preserve.  She contends that her lack of visitation should not be counted against her because although she sought visitation, it was denied.  The social worker observed during the first visit between M.S. and A.S. that the two shared a bond.  There is no evidence to the contrary.  Accordingly, we agree that the undisputed evidence compels the conclusion that a bond existed between mother and child when the child was detained and that at four years old, A.S. understood that M.S. was her mother.  That evidence does not, however, compel the conclusion that M.S. continued to occupy a parental role in A.S.'s life as of the date of the section 366.26 hearing.  By the time of the hearing, M.S. had not seen A.S. for six months, and during those six months, A.S. had bonded with her prospective adoptive parents and, although the social worker's report shows that A.S. continued to talk about her mother with the encouragement of the prospective adoptive mother, she had begun to

9

look at the prospective adoptive mother as her parent.[4] Accordingly, even if a rational trier of fact could conclude that a beneficial parental relationship existed despite M.S.'s mental illness, we cannot say that the evidence *compels* that conclusion. Accordingly, M.S. has not met her burden on appeal. (*In re I.W.*, *supra*, 180 Cal.App.4th at pp. 1528-1529.)

Moreover, even if we concluded that the evidence does compel a finding that a beneficial parental relationship existed, we could not conclude that the juvenile court erred as to the second prong of the exception. The other component of the beneficial parental relationship exception is a "*compelling reason* for determining that termination [of parental rights] would be detrimental" to the child]. (§ 366.26, subd. (c)(1)(B), italics added.) That determination is a "'quintessentially' discretionary decision, which calls for the juvenile court to determine the *importance* of the relationship in terms of the detrimental impact that its severance can be expected to have on the child and to weigh that against the benefit to the child of adoption." (*In re Bailey J.*, *supra*, 189 Cal.App.4th at p. 1315.) M.S. has made no attempt to show that the juvenile court abused its discretion in determining, implicitly, that the benefit to A.S. of adoption outweighed any potential detriment A.S. might suffer from the termination of M.S.'s parental rights.

---

[4] This is not an effort to "penalize" M.S. for her inability to visit A.S., but rather the recognition that parental absence from the life of a very young child for a period of six months may affect the strength of the bond from the child's point of view. This is the reason that regular visitation is an element of the exception. (§ 366.26, subd. (c)(1)(B)(i).)

Accordingly, M.S. has not met her burden with respect to that component of the exception.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
J.

We concur:

HOLLENHORST
Acting P. J.

MILLER
J.

11