Filed 4/14/15  In re Matthew S. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# COPY

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| In re MATTHEW S. et al., Persons Coming Under the Juvenile Court Law. | C077430 |
| SHASTA COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>GARY C. et al.,<br><br>Defendants and Appellants. | (Super. Ct. Nos. 12JVSQ2941401, 12JVSQ2941501, 12JVSQ2941601, 13JVSQ2994601) |

Gary C. and Shirley C., parents of the minors, appeal from orders of the juvenile court terminating their parental rights.  (Welf. & Inst. Code, §§ 366.26, 395 [unless otherwise stated, statutory references that follow are to the Welfare and Institutions Code].)  The parents argue the court erred in failing to find they had established the

beneficial parental relationship exception to termination of parental rights. We affirm the juvenile court's orders.

FACTS AND PROCEEDINGS

The three older minors, Matthew, age 4; B., age 2; and Neveah, age 1, were first removed from parental care in August 2012 due to the parents' methamphetamine use and ongoing domestic violence. The court adopted a reunification plan in October 2012 and over the next several months, the parents complied with the plan and made progress toward reunification. We note that Gary C. is the biological father of B., Neveah and a fourth child, Dustin and the presumed father of Matthew. The terms "father" and "parents" refer only to Gary C. because Matthew's biological father is not a part of the case.

The court returned the minors to the parents in August 2013 under a family maintenance plan. At the review hearing in October 2013, the court continued the family maintenance plan. Dustin was born shortly before the October review hearing.

In December 2013, the Shasta County Health and Human Services Agency (the Agency) filed supplemental petitions to again remove Matthew, age 5; B., age 3; and Neveah, age 2, from parental custody due to the parents' relapse into methamphetamine use and failure to comply with the family maintenance plan. The Agency also filed an original petition to remove two-month-old Dustin from parental custody for the same reasons. The court detained the minors and set visitation at one hour one time a month.

The court sustained the petitions. At the disposition hearing in March 2014 the court terminated services as to the three older minors, bypassed services as to the youngest and set a section 366.26 hearing.

The report for the section 366.26 hearing stated the minors were moved to an adoptive placement in May 2014. The report described visits as inappropriate, in part, because the parents tried to ask the minors where they were currently placed and

2

discussed the case with them. It was necessary to have security present in visits because father had made threats to abscond with the minors. The parents became upset during visits about contrived issues and their behavior caused anxiety for the minors. Matthew was anxious and excited before visits and had the most reaction to visits. B. had some negative behaviors for several days after visits. Neveah and Dustin were indifferent to visits.

At the section 366.26 hearing in June 2014, the Agency requested a continuance to complete notice and asked for a finding that further visits would be detrimental to the minors. Minors' counsel wanted an opportunity to speak to Matthew before the court decided the visitation issue. The court was not prepared to make a detriment finding and set a hearing to address the issue on July 9, 2014.

The Agency filed an addendum report on July 8, 2014. The report stated that a confidential reporter said Matthew appeared to be afraid of father. The Agency again asked the court to find visits detrimental to the minors.

At the July 9, 2014, hearing on visitation, minors' counsel informed the court that the minors looked at visits as an opportunity to get things rather than spend time with the parents. Minors' counsel reported that both Matthew and B. were sad before visits knowing the parents had made bad choices. Both boys said they would like to see the parents but only because the parents brought them things. Matthew was nervous about visits because he was afraid the parents would not do the right things in visits. The court found clear and convincing evidence that visitation would be detrimental to the physical and emotional well-being of the minors and terminated visitation.

At the section 366.26 hearing in August 2014, both parents testified. Mother testified her last visit with the minors was in June. The minors were excited when they came to visits. Mother said they gave the minors toys and played with them during visits and the minors were sad at the end because they did not want to leave. Mother testified Matthew told her that he and his siblings wanted to come home.

3

Father testified he was very bonded to all the minors.  He was currently in recovery, had been clean since December 2013 and had completed his plan.  Father testified the minors were ecstatic to see them at visits.  He stated that severing their relationship would affect him and he believed it would also affect the minors.  Father had also grown up in foster care which led him to hate the system and he believed it would affect the minors the same way and cause Matthew in particular a lot of mental stress.

Mother and father argued there was a significant parent-child bond and the court should consider long-term foster care or guardianship for the minors. The court found that while there was evidence of the parents' bonds to the children, there was not evidence of the minors' bonds to the parents.  The court adopted the recommended findings and orders, terminating parental rights and selecting adoption as the permanent plan.

## DISCUSSION

The parents argue the court erred in terminating their parental rights because the evidence established the existence of the beneficial parental relationship exception to termination of parental rights.

At the selection and implementation hearing held pursuant to section 366.26, a juvenile court must choose one of the several " 'possible alternative permanent plans for a minor child. . . . *The permanent plan preferred by the Legislature is adoption*. [Citation.]'  [Citation.]  If the court finds the child is adoptable, it *must* terminate parental rights absent circumstances under which it would be detrimental to the child." (*In re Ronell A*. (1996) 44 Cal.App.4th 1352, 1368, original emphasis.)  There are only limited circumstances which permit the court to find a "compelling reason for determining that termination [of parental rights] would be detrimental to the child." (§ 366.26, subd. (c)(1)(B).)  The party claiming the exception has the burden of establishing the existence of any circumstances which constitute an exception to termination of parental rights.

4

(*In re Cristella C*. (1992) 6 Cal.App.4th 1363, 1373; *In re Melvin A*. (2000) 82 Cal.App.4th 1243, 1252; Cal. Rules of Court, rule 5.725(d)(4); Evid. Code, § 500.) The primary exceptions, i.e., benefit from continued contact with the parent and interference with a sibling relationship, each require the party to establish a factual predicate and the court to weigh the evidence. Substantial evidence must support the factual predicate of the exception, but the court exercises its discretion in the weighing process. (*In re Bailey J*. (2010) 189 Cal.App.4th 1308, 1314-1315.)

Termination of parental rights may be detrimental to the minor when: "The parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).) However, the benefit to the child must promote "the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents. In other words, the court balances the strength and quality of the natural parent/child relationship in a tenuous placement against the security and the sense of belonging a new family would confer. If severing the natural parent/child relationship would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated." (*In re Autumn H*. (1994) 27 Cal.App.4th 567, 575; *In re C.F*. (2011) 193 Cal.App.4th 549, 555.) Even frequent and loving contact is not sufficient to establish this benefit absent a significant positive emotional attachment between parent and child. (*In re I.R.* (2014) 226 Cal.App.4th 201, 213.)

It is not disputed that the parents visited the minors regularly until visitation was terminated. It is the nature of the relationship at the time of the section 366.26 hearing which is in dispute.

Following the December 2013 removal, the parents' behavior in visits escalated. The parents talked about taking the minors and asked about the location of their current foster home. Father was threatening and visits had to have security present. Whatever

his relationship with father had been, Matthew now expressed fear of his father. Matthew and B. were nervous about the parents' behavior in visits and only wanted to visit because the parents brought them things. Attending visits was stressful for the minors and caused anxiety reactions in Matthew and B. when they returned to the foster home. Neveah and Dustin were indifferent to visits and showed no connection to the parents. Ample evidence supported the court's conclusion that there was not a substantial positive emotional bond between the minors and the parents. The juvenile court did not abuse its discretion in terminating parental rights.

DISPOSITION

The orders of the juvenile court are affirmed.


                                                    HULL            , J.



We concur:



      NICHOLSON      , Acting P. J.



      RENNER        , J.


6