Filed 7/21/15  In re D.P. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re D.P., a Person Coming Under the Juvenile Court Law. | D067597 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, Plaintiff and Respondent, v. J.K., Defendant and Appellant. | (Super. Ct. No. EJ3065) |

APPEAL from a judgment of the Superior Court of San Diego County, Gary M. Bubis, Judge.  Affirmed.

Neale B. Gold, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel and Paula J. Roach, Deputy County Counsel, for Plaintiff and Respondent.

INTRODUCTION

Mother appeals from a juvenile court judgment terminating her parental rights and choosing adoption as the appropriate permanent plan for her child. (Welf. & Inst. Code, § 366.26.)[1] She contends the court erred in determining the beneficial parent-child relationship exception to adoption (§ 366.26, subd. (c)(1)(B)(i)) is inapplicable. We disagree and affirm the judgment.

BACKGROUND

The San Diego County Health and Human Services Agency (Agency) filed a petition alleging mother failed to protect her then five-year-old child.[2] (§ 300, subd. (b).) According to the petition, mother has a history of methamphetamine use, the child had previously been a dependent of the court because of mother's drug use, mother had recently been arrested for possession of drugs and drug paraphernalia, and law enforcement officers conducting a lawful search of mother's home found drugs and drug paraphernalia within the child's reach.

The court detained the child in a relative's home and ordered reunification services for mother as well as liberal, supervised visitation between mother and the child. Following a contested jurisdiction and disposition hearing, the court declared the child to

---

[1]   All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2]   The petition made the same allegation as to the presumed father. We do not discuss the presumed father's role in the proceedings below because his role was insubstantial and he did not appeal the court's judgment.

be a dependent child, removed the child from mother's custody, and continued the child's placement in the relative's home. The court further ordered mother to comply with her case plan and the Agency to provide mother with reunification services consistent with her case plan.

In conjunction with the six-month review hearing, minor's counsel filed a request for an order terminating mother's reunification services, and the court set the matter for a contested hearing. At that point, mother's visits with the child had been inconsistent. Mother delayed her first visit with the child until approximately a month after the dependency proceeding commenced. Her next visit did not occur until two months later and, by then, the child was resistant to visits. Of 11 visits scheduled in the three months preceding the hearing on the termination of reunification services, the child refused one and mother failed to show up for four of them.

By the time of the hearing on the termination of reunification services, the child rarely wanted to visit mother, barely talked to her on the phone, and expressed a great deal of fear and anger toward mother during therapy. According to the child's therapist, the child did not want to visit with mother because the child was afraid the visits would lead to the child once again living with mother, which the child did not want to do. The therapist explained, the child "[m]isses mom, loves mom, but doesn't feel safe with mom" and "does not want to live with her." Nonetheless, when visits occurred, they were generally positive, although the child typically required 15 to 20 minutes to warm up to mother.

3

After the hearing on the termination of reunification services, the court granted minor's counsel request and terminated services, finding mother had failed "to participate regularly and make substantive progress in a court-ordered treatment program," which created "a substantial likelihood that reunification will not occur." The court then set a hearing under section 366.26 (.26 hearing) to select and implement a permanent plan for the child.

After the termination of reunification services, mother's visits with the child initially remained inconsistent with mother visiting the child just four times in a three-month period. The visits became more consistent about three months before the .26 hearing, when mother entered an inpatient substance abuse treatment program. However, mother self-discharged from the program a few weeks before the .26 hearing and missed the next scheduled visit with the child.

While mother's visits with the child continued to have positive aspects, there were several instances during the visits where the child rejected mother's bonding efforts, demonstrated affection to mother only when solicited, and was physically aggressive with mother. In addition, the child had little difficulty leaving mother when the visits concluded and displayed anxiety before, during, and after the visits.

In reports prepared for the .26 hearing, the Agency recommended the court terminate mother's parental rights and select adoption as the child's permanent plan. Meanwhile, because the child's relative caregiver did not want to adopt the child, the Agency placed the child with a foster family approved to and desiring to become the child's adoptive family.

4

By the time of the .26 hearing, the child had resided with the foster family for a little over two months. According to a report prepared by the child's court-appointed special advocate, the foster family was very welcoming to the child, the child was comfortable with the foster family, and the child was beginning to consider the foster family as her own. The child's former relative caregiver similarly reported the child loved living with the foster family and was thriving in their home.

At the .26 hearing, mother testified she did not believe the court should terminate her parental rights because the child needs mother, the child would suffer emotionally without mother, and it was in the child's best interest for mother to be in her life. In addition, she testified the child referred to her as "mommy," and they had a loving, affectionate relationship. She described her visits with the child, indicating they would play with toys, play games, draw, "try" to talk, and "try" to bond. Although she verbally expressed her love to the child, the child did not reciprocate. Nonetheless, she believed the child loves her.

At the conclusion of the .26 hearing, the court found by clear and convincing evidence the child was adoptable and none of the statutory exceptions to adoption applied. Consequently, the court terminated mother's parental rights and selected adoption as the child's permanent plan.

## DISCUSSION

Following a .26 hearing, if the court determines by clear and convincing evidence the child will likely be adopted, the court must terminate parental rights and order the child placed for adoption. (§ 366.26, subd. (c)(1).) However, the court may find there is

5

a compelling reason for determining termination of parental rights would be detrimental to the child if: (1) the parent has maintained regular visitation and contact with the child, and (2) the child would benefit from continuing the relationship. (§ 366.26, subd. (c)(1)(B)(i).) The parent opposing termination of his or her rights bears the burden of establishing both prongs of the beneficial parent-child relationship exception by a preponderance of the evidence. (*In re J.C.* (2014) 226 Cal.App.4th 503, 529; *In re C.F.* (2011) 193 Cal.App.4th 549, 553 (*C.F.*).)

We review the court's determination regarding each prong of the exception for substantial evidence.[3] (*C.F.*, *supra*, 193 Cal.App.4th at p. 553.) "On review of the sufficiency of the evidence, we presume in favor of the [judgment], considering the evidence in the light most favorable to the prevailing party, giving the prevailing party the benefit of every reasonable inference and resolving all conflicts in support of the [judgment]." (*In re Autumn H.* (1994) 27 Cal.App.4th, 567, 576.)

---

[3] A few appellate courts have adopted a hybrid standard of review for cases involving the beneficial parent-child relationship exception. Like us, these courts review for substantial evidence whether the parent and child regularly visited and whether they have a beneficial relationship. The courts then review for abuse of discretion whether the visitation and relationship constitute a compelling reason for finding the termination of parental rights would be detrimental to the child. (*In re J.C.*, *supra*, 226 Cal.App.4th at pp. 530-531; *In re K.P.* (2012) 203 Cal.App.4th 614, 621-622; *In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1314-1315.) As we explain *post*, the evidence in this case does not support findings the mother regularly visited the child or had a beneficial relationship with the child. We, therefore, have no occasion to consider whether the visitation and relationship constitute a compelling reason to decline to terminate mother's parental rights or what standard of review we should apply to this determination.

# I

Regarding the visitation prong of the exception, the parties agree mother visited with the child during the dependency proceeding, but they dispute whether the visitation was regular. The Agency bases its position on mother's visitation history for the entire proceeding. Mother bases her position largely on her visitation history for the last three months of the proceeding. As the Agency asserts and mother acknowledges, her visits with the child were sporadic for most of the proceeding. Her visits did not become consistent until about three months before the .26 hearing, when she was confined to an in-patient substance abuse treatment program. Notably, after mother self-discharged from the program, a few weeks before the .26 hearing, she missed her very next scheduled visit with the child. As we must view the record as a whole and in the light most favorable to the judgment, we conclude there is substantial evidence to support a finding mother's visits and contacts with the child were not regular. (*C.F., supra*, 193 Cal.App.4th at p. 554 [visitation consistent near the .26 hearing, but sporadic overall, is insufficient to meet the first prong of the beneficial parent-child relationship exception].)

# II

Even if mother's visitation history was sufficient to establish she regularly visited the child, the record does not show she had a beneficial relationship with the child. Because any interaction between a parent and child will confer *some* incidental benefit to the child (*In re Autumn H.*, *supra,* 27 Cal.App.4th at p. 575), to satisfy the beneficial relationship prong of the beneficial parent-child relationship exception, "[t]he parent must show he or she occupies a parental role in the child's life, resulting in a significant,

7

positive, emotional attachment between child and parent." (*C.F.*, *supra*, 193 Cal.App.4th at p. 555.) " 'The factors to be considered when looking for whether a relationship is important and beneficial are: (1) the age of the child, (2) the portion of the child's life spent in the parent's custody, (3) the positive or negative effect of interaction between the parent and the child, and (4) the child's particular needs.' " (*In re Bailey J.*, *supra*, 189 Cal.App.4th at p. 1315.) Additionally, "the parent must show the child would suffer detriment if his or her relationship with the parent were terminated." (*C.F.*, at p. 555.)

Mother did not meet her burden in this case. This is the child's second dependency case. At the time of the .26 hearing, the child was six years old and had spent almost three of those years as a dependent of the court. The child's visits with mother, while not wholly unpleasant, never revealed a significant, positive, emotional attachment between the two, parental or otherwise. To the contrary, the visits invariably prompted indifferent, aggressive, and anxious behavior from the child toward the mother. Mother tacitly recognized her lack of a strong parental connection with the child when she admitted at the .26 hearing the child could not express love for her and when she hedgingly characterized her efforts during their visits as "try[ing]" to talk with and "try[ing]" to bond with the child.

Moreover, the child had little difficulty separating from mother after their visits, and the child was afraid and unwilling to live with mother again, or even to visit with her alone. Conversely, the child is happily residing with and bonding with a foster family approved to and desiring to become the child's adoptive family. The child is entitled to bond with individuals who will assume the role of parents in the child's life. (*In re*

8

*Brittany C.* (1999) 76 Cal.App.4th 847, 854; see *C.F.*, *supra*, 193 Cal.App.4th at p. 557 ["[C]hildren are entitled to stability and permanence through adoption."].)  Accordingly, we conclude there is substantial evidence in the record to support a finding mother did not have a beneficial relationship with the child and the court did not err in determining the beneficial parent-child relationship exception did not apply.

### DISPOSITION

The judgment affirmed.


McCONNELL, P. J.

WE CONCUR:


BENKE, J.


HUFFMAN, J.