Filed 10/24/13  In re Bethany W. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re BETHANY W., a Person Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>      v.<br><br>S.S.,<br><br>    Defendant and Appellant. | G048417<br><br>(Super. Ct. No. DP021366)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Deborah C. Servino, Judge.  Affirmed.

Lauren K. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant.

Nicholas S. Chrisos, County Counsel, Karen L. Christensen and Jeannie Su, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for the Minor.

\*       \*       \*

The juvenile court found by clear and convincing evidence the benefit exception did not apply, terminated parental rights and ordered adoption for Bethany W. We affirm.

I

FACTS

Bethany was four years old in May 2011 when she was found by Orange County Social Services Agency (SSA) living with her mother in a living environment where the mother urinated and defecated on the floor in the bedroom that she and the child shared. The mother had a diagnosis of major depression. The social worker's report states: "The carpeted floor is saturated and wet with urine and there were four to five areas encrusted with human feces. The bedroom has a very strong odor of human urine and feces. The mother prepares food and she and child eat in the same bedroom." Bethany told the social worker her mother had taught her to urinate on the floor.

The whereabouts of Bethany's father were unknown. He was believed to be homeless. By July 2011, SSA had exhausted all available leads, but was not able to locate him.

The juvenile court removed Bethany from the home after finding there was substantial danger to her physical and emotional health, and declared her a dependent of the juvenile court under Welfare and Institutions Code section 360, subdivision (d). (All further statutory references are to the Welfare and Institutions Code.) At first, she was detained at an emergency shelter, and later with foster parents. Reunification services for and visitation with the mother were ordered.

On April 22, 2013, the juvenile court conducted a hearing pursuant to section 366.26. Bethany was reported to say she wanted to live with her "mom," referring to her prospective adoptive parent. At one point, when she was asked to draw a picture of her family; she drew a picture of herself with her two prospective adoptive parents and their son.

2

There was also evidence presented at the hearing that, while early in her placement, Bethany did express some sentiment to the effect she missed her mother, no such sentiment had been expressed in the year prior to the hearing. A social worker wrote in a report: "The child expresses that although she likes visiting her mother, she does not really like going to visits. The child states that she would rather be home with her "real mom." The caregiver reported to SSA that Bethany "was having difficulty transitioning back home after visits with the mother," such as regressing into poor bathroom hygiene and acting aggressive.

At the conclusion of the section 366.26 hearing, parental rights were terminated and Bethany was placed for adoption. A finding was made that mother did not meet her burden by a preponderance of evidence that the parental exception applies and, by clear and convincing evidence, the court found the provisions of section 366.26, subdivision (c)(1)(A) or subdivision (c(1)(B)(i)-(vi) do not apply. The juvenile court stated Bethany's placement is necessary and appropriate and that it is likely she will be adopted.

II

DISCUSSION

In her appeal, the mother contends the juvenile court erred in failing to find an exception to termination of parental rights under section 366.26 (c)(1)(B)(i) in light of the beneficial relationship she and Bethany have. She argues the court should have ordered a permanent plan of legal guardianship or long-term foster care.

"If the court determines . . . by a clear and convincing standard, that it is likely the child will be adopted, the court shall terminate parental rights and order the child placed for adoption. . . . Unless . . . the following applies: [¶] The court finds a compelling reason for determining that termination would be detrimental to the child due to . . . . [¶] The parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).)

The burden of proving the exception applies is on the party seeking to establish the exception. (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1527.) "To meet the burden proving the section 366.26, subdivision (c)(1)B)(i) exception the parent must show more than frequent and loving contact, an emotional bond with the child, or pleasant visits— the parent must show that he or she occupies a parental role in the life of the child. [Citation.]" (*Ibid.*)

The reviewing court determines whether substantial evidence supports the juvenile court's findings of fact regarding the existence of a beneficial parental relationship. (*In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1314.) But a "juvenile court finding that the relationship is a 'compelling reason' for finding detriment to the child is *based* on the facts . . . . It is . . . a 'quintessentially' discretionary decision, which calls for the juvenile court to determine the *importance* of the relationship in terms of the detrimental impact. . . . Because this component of the juvenile court's decision is discretionary, the abuse of discretion standard of review applies." (*Id.* at p. 1315.)

Under section 366.26, subdivision (c)(1)(A) and (B), the court "shall terminate parental rights" unless "[t]he child is living with a relative who is unable or unwilling to adopt the child . . . and the removal of the child from the custody of his or her relative would be detrimental to the emotional well-being of the child," or the court finds a compelling reason for determining that termination would be detrimental to the child due to circumstances listed in subdivision (c)(1)(B)(i)-(vi). The juvenile court is mandated to make its order pursuant to the priorities listed in section 366.26, subdivision (b), and the first order of preference is adoption. (§ 366.26, subd. (b)(1).)

Here SSA concedes mother met the first prong of the benefit exception by having regular visitation and contact with Bethany. SSA argues, however, the court had substantial evidence before it to conclude mother did not meet the second prong, the benefit showing. The mother states Bethany would benefit from continued contact with her, and that the two have a strong bond. She further contends the court had a duty to

4

recognize that bond, and that "to do otherwise constitutes an unnecessary and inappropriate governmental intrusion into this family."

The mother does not appeal the finding that Bethany is adoptable. She agrees that adoption is the preferred permanent plan. But she argues that "in light of the strong bond between Bethany and mother, the court was required to consider which permanent plan, *other than adoption*, to order."

Under the circumstances we find in this record, we cannot conclude the juvenile court erred. Substantial evidence supports the court's findings and orders, and we see nothing to indicate the court abused its discretion.

III

DISPOSITION

The order of the juvenile court is affirmed.


MOORE, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


ARONSON, J.

5