Filed 12/10/13  In re A.R. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re A.R., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES,  Plaintiff and Respondent, v. D.R.,  Defendant and Appellant. | E059391  (Super.Ct.No. J238341)  OPINION |

APPEAL from the Superior Court of San Bernardino County.  Cheryl C. Kersey, Judge.  Affirmed.

Leslie A. Barry, under appointment by the Court of Appeal, for Defendant and Appellant.

Jean-Rene Basle, County Counsel, and Danielle E. Wuchenich, Deputy County

1

Counsel, for Plaintiff and Respondent.

I

INTRODUCTION

Mother appeals from an order terminating her parental rights pursuant to Welfare and Institutions section 366.26.[1] Mother argues the juvenile court's failure to apply the beneficial parent-child relationship exception to adoption requires reversal. We reject mother's appeal and affirm the judgment.

II

FACTUAL AND PROCEDURAL BACKGROUND

A.R., the subject of this appeal, was born in October 2009. He is presently four years old. His father is G.R. Mother's other two children are not the subject of this appeal because they are living with their father, A.L.

A. Detention

The original dependency petition was filed by CFS[2] in April 2011. It alleged failure to protect and no provision for support (§ 300, subds. (b) & (g)) based on mother not providing safe and adequate housing or supervision and allowing access to harmful medications. The petition also alleged mother had a prescription drug problem. A.R.'s

---

[1] All further statutory references are to the Welfare and Institutions Code unless stated otherwise.

[2] Children and Family Services, San Bernardino County.

older half-sister had sustained a black eye and facial bruising from G.R., who had a history of anger management issues. Mother was incarcerated for child endangerment. (Pen. Code, § 273a.)

In the detention report , CFS stated that mother had left A.R. and his two half-siblings, ages six and eight, alone at night for about an hour. Mother had been detained at 3:00 a.m. during a narcotics investigation at another location conducted by the San Bernardino County Sheriff and the criminal investigative division of the 29 Palms Naval Base. Mother claimed the three children were with a friend. Instead, the officers discovered the children alone with the front door unlocked, the home in an unsanitary condition, and excessive amounts of drugs, including "Triple C" and Ecstasy. A German shepherd was present and the home was in disarray and had a strong odor of urine. The bathroom smelled of urine and the floor had urine stains. The toilet was dirty. A.R. was in a crib soaked with urine and sour milk. He was wheezing because he was asthmatic. Mother appeared to be engaged in prostitution. G.R. had been deployed to Afghanistan.

The family's previous history included referrals for abuse and neglect in May and June 2009, March 2010, and February 2011. Mother was suspected of using her older son's prescription medicine. The family received maintenance services from June 2009 until March 2010.

The juvenile court found a prima facie showing had been made and ordered the children detained in a foster home.

*B. Jurisdiction and Disposition Report*

CFS interviewed mother in jail. She admitted having made a poor choice but she claimed she had only left the children briefly while driving a friend home. Mother denied abusing drugs or alcohol but admitted taking anxiety medication. G.R. had returned from Afghanistan and was losing his military housing because of the drugs found there.

The parents participated in mediation and submitted on the amended petition. The juvenile court sustained the amended petition, declared A.R. a dependent and ordered him removed from the parents' custody pending the provision of family reunification services.[3] Mother's case plan required her to participate in substance abuse treatment, drug testing, individual therapy, psychotropic medication evaluations and monitoring, and a parenting program.

*C. Status Review Report*

In December 2011, CFS reported that mother's drug abuse had increased and she had accused G.R. of domestic violence and rape. Mother was uncooperative about drug tests and she tested positive four times. Mother was soliciting men by sending them photographs of her exposed breasts. Between June 2011 and January 2012, mother completed individual therapy and a parenting education program but denied she had a substance abuse problem in spite of the positive drug tests. On December 31, 2011,

---

[3] G.R. subsequently moved to Texas and then disappeared.

mother was arrested for burglary and petty theft and convicted of felony burglary in March 2012. Between January and July 2012, mother failed to participate regularly in services. From July to October 2012, mother failed to make any further progress toward reunification. In October 2012, mother was unemployed, without any known source of income. She was also on probation for shoplifting.

Between June 2011 and January 2012, mother visited A.R. regularly twice a week for an hour and their visits were described as "'fair' but not wholly satisfactory" because mother spent the time on her cell phone or talking to the foster mother or social worker. From January to October 2012, mother regularly visited A.R. once a week for two hours and the visits were described as "appropriate."

Between June 2011 and October 2012, A.R. remained placed in the same foster home. He was healthy, developmentally on target, and bonded with his caretakers, who were granted de facto parent standing on September 21, 2012.

On October 9, 2012, the juvenile court ordered mother's reunification services terminated and selected a permanent plan of long-term foster care for A.R. A.R. was happy, healthy, developmentally on target and bonded to his caretakers. Mother continued to visit weekly for two hours and the visits were described as appropriate.

D. *Section 366.26 Hearing*

As recommended by CFS, the juvenile court set a section 366.26 selection and implementation hearing as to A.R. to consider adoption by the caretakers.

5

CFS described A.R. as a happy child who was attached to his caretakers, whom he called "Papa" and "Grammy." He was healthy and developmentally on target except for some mild speech delays that were being addressed. A.R. enjoyed visits with mother but he did not seek her out for comfort or support and he separated from her easily at the end of visits. A.R.'s two siblings were relocating to live with their father in Pennsylvania but they were maintaining contact with A.R.

On July 17, 2013, mother filed a section 388 petition for modification alleging she had completed substance abuse treatment and counseling and was participating in a domestic violence and child abuse program and seeking either custody of A.R. or increased visitation and additional services. The juvenile court summarily denied mother's petition.

Mother appeared at the contested section 366.26 hearing on August 8, 2013. Mother testified that she visited A.R. once a week for two hours at the Yucca Valley CFS office, supervised by a social worker. She believed her visits with A.R. were "pretty good." He was always happy to see her and called her "Momma." They played with toys and talked about A.R.'s school. At the end of the visits, A.R. was neither happy nor upset. Mother believed that A.R.'s relationship with her was important to him and that, because of their visits, he knew he could depend on his mother. Mother's counsel argued that the beneficial parent-child relationship exception to adoption applied and mother's parental rights should not be terminated.

6

The juvenile court found A.R. was adoptable and that the beneficial parent-child exception to adoption did not apply. Therefore, the juvenile court ordered termination of mother's parental rights and selected adoption by the prospective parents as A.R.'s permanent plan.

## III

## SECTION 366.26, SUBDIVISION (c)(1)(B)(i)

Adoption is the preferred permanent plan for a dependent child once family reunification efforts have proven unsuccessful. (*In re Marilyn H.* (1993) 5 Cal.4th 295, 307; *In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1348.) Section 366.26 provides that, once the juvenile court determines that a dependent child is likely to be adopted, it shall terminate parental rights unless one of the seven enumerated exceptions to adoption applies. (§ 366.26, subd. (c)(1).) Section 366.26, subdivision (c)(1)(B)(i), provides the preference for adoption is overcome, and another permanent plan should be selected, where the parent establishes that she maintained regular visitation and contact with the child, the child would benefit from continuing that relationship, and terminating the relationship would cause the child to suffer detriment. (*In re S.B.* (2008) 164 Cal.App.4th 289, 300-301.)

The applicability of the exceptions to adoption is reviewed under a hybrid substantial evidence and abuse of discretion standard. (*In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1314.) The questions for the reviewing court are "whether the

7

evidence compels a finding in favor of the appellant as a matter of law" as to the factual questions of whether the parent maintained regular visitation with the child, whether a beneficial parent-child or sibling relationship exists, and whether the juvenile court's application of the law to the facts was arbitrary or capricious. (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1528; *In re C.B.* (2010) 190 Cal.App.4th 102, 123.)

In this case, mother maintained consistent visitation with A.R. from June 2011 to August 2013. However, mother cannot demonstrate a credible benefit or corresponding detriment to A.R. by severing their relationship.

In *In re Autumn H.* (1994) 27 Cal.App.4th 567, 575, the Court of Appeal described the beneficial parent-child relationship as "[t]he significant attachment from child to parents [that] results from the adult's attention to the child's needs for physical care, nourishment, comfort, affection[,] stimulation . . . companionship and shared experiences." The four factors to be considered in determining whether the parent occupies a parental role in the child's life are "[t]he age of the child, the portion of the child's life spent in the parent's custody, the 'positive' or 'negative' effect of interaction between parent and child, and the child's particular needs[.]" (*Id.* at p. 576; *In re S.B., supra*, 164 Cal.App.4th at p. 299; *In re Casey D.* (1999) 70 Cal.App.4th 38, 51.)

A.R. was only 18 months old when he was detained and he was three years and 10 months old at the time of the section 366.26 hearing. More than 60 percent of his life (28 months) was lived with his foster family. There is no evidence that A.R. had an

emotional attachment to mother that was stronger than his attachment to his beloved caretakers, Papa and Grammy. A.R. did not react negatively or positively to mother's visits. Other than having pleasant visits with A.R., there is little or no evidence that mother attended to A.R.'s needs for physical care, nourishment, comfort, affection, stimulation, companionship and shared experiences. Mother gave no indication that she was able to meet A.R.'s particular needs. There is no evidence that mother occupied a parental role in A.R.'s life. The juvenile court did not abuse its discretion when it found that the benefits of adoption outweighed any detriment to A.R. by the termination of parental rights.

IV

DISPOSITION

Mother did not establish the beneficial parent-child relationship exception. We affirm the findings and orders of the juvenile court.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

RAMIREZ
P. J.

HOLLENHORST
J.

9