Filed 8/17/15  In re N.H. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re N.H. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E062975 |
| Plaintiff and Respondent, | (Super.Ct.No. J252325) |
| v. | OPINION |
| S.F., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Lynn M. Poncin, Judge.  Affirmed.

Jack A. Love, under appointment by the Court of Appeal, for Defendant and Appellant.

Jean-Rene Basle, County Counsel, and Jamila Bayati, Deputy County Counsel, for Plaintiff and Respondent.

1

Defendant and appellant S.F. (mother) appeals the trial court's February 24, 2015, order terminating her parental rights to two of her six children pursuant to Welfare and Institutions Code[1] section 366.26. She contends the court erred in finding the sibling bond exception to adoption (§ 366.26, subd. (c)(1)(B)(v)) inapplicable. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In October 2013, mother's children (I.L., age 15; J.L., age 12; E.L., age 9; R.F., age 6 (sometimes collectively referred to as "half siblings"); W.H., age 2 (born August 2011); and N.H., age 1 (born September 2012)[2]) came to the attention of San Bernardino Children and Family Services (CFS), after CFS received referrals indicating the children were left unsupervised without food, mother was abusing drugs and alcohol, and her boyfriend may have been selling drugs out of the home. On December 5, 2013, CFS filed petitions on behalf of all of the children pursuant to section 300, subdivisions (b) (failure to protect) and (g) (failure to provide for children), alleging that mother had a substance abuse problem and a history of domestic violence.[3] On December 6, 2013, the trial court found a prima facie case under section 300 and detained the children with mother.

---

[1] All further undesignated statutory references are to the Welfare and Institutions Code.

[2] W.H. and N.H. share the same "alleged" father, who was not involved in the proceedings and is not a party to this appeal.

[3] Where sibling documents are redundant, this opinion will cite to only one sibling record in the clerk's transcript and not the other.

On January 15, 2014, CFS filed an amended section 300 petition adding allegations that the family home was dirty and mother was at risk of being arrested for one child's lack of attendance at school. The children were taken into protective custody. J.L., E.L., and R.F. were placed with a maternal aunt, while I.L., W.H., and N.H. were placed in a foster home. On January 16, the court detained the children and ordered supervised visitation with mother, as well as sibling visitation. At the jurisdiction/disposition hearing, the court sustained the allegations in the section 300 petition and ordered reunification services.

According to the six-month status review report, mother was not complying with her case plan and had visited the children only through mid-March 2014. By April, mother's whereabouts became unknown. The siblings consistently visited with each other except for April and May 2014. On August 19, 2014, based on CFS's recommendation, the court terminated reunification services and set a section 366.26 hearing.

According to the section 366.26 report filed on December 3, 2014, the children were in good physical health; however, there had been multiple changes in their placements. W.H. and N.H. had lived in four different homes for periods of time ranging from one to five months. Although they had only been in their current placement since October 27, 2014, the caregiver wanted to adopt them and was willing to maintain the sibling relationship through regular visitation. W.H.'s and N.H.'s older half siblings were not in adoptive homes and they did not want to be adopted or separated due to their

strong sibling bond. CFS noted that mother had visited the children four times since August 2014; however, she was overwhelmed when all six children were together and relied on the two older children to manage the behaviors of their younger siblings.

On December 17, 2014, the children's attorney declared a conflict and new attorneys were appointed, one for W.H. and N.H., and one for their half siblings. A contested section 366.26 hearing was set.

On January 26, 2015, the half siblings filed a section 388 petition requesting the trial court to order legal guardianship, instead of adoption, for W.H. and N.H. The petition asserted that the "benefit of retaining the sibling relationship outweighs the benefit of being adopted." They claimed the siblings had forged a bond by sharing adverse family conditions, and the bond was strengthened by the older children taking care of the younger ones. In opposition, CFS argued that it would be unfair to deny W.H. and N.H. an opportunity to achieve permanency when their prospective adoptive parent was maintaining the sibling relationship through visitation and contacts between the siblings. The caregiver understood the importance of W.H.'s and N.H.'s relationship with their older siblings. The trial court denied an evidentiary hearing on the section 388 petition, finding "the proposed change of order does not promote the best interest of [W.H. and N.H.] because it appears that the sibling bond is not going to be terminated because of the prospective adoptive parent's willingness to make sure that [W.H. and N.H.] continue to see their brothers."

At the February 24, 2015, contested section 366.26 hearing, the trial court ordered legal guardianship for I.L., and the dependency was terminated on her case. J.L., E.L. and R.F. were placed together; the court found termination of parental rights would be detrimental to those children because there would be a substantial interference with the sibling bond relationship.

Regarding W.H. and N.H., mother objected to termination of parental rights because she did not "want to lose [her] kids" and she believed they had an attachment to her other children. Mother said that during visits, W.H. and N.H. would run to their siblings and everyone played together. N.H. liked to be held by his half siblings and W.H. would give them "kisses and hugs." Mother stated that when the children lived with her, the older ones helped take care of the youngest. Mother described the past sibling relationship as "[r]eally strong," explaining "they love each other a lot."

The trial court found W.H. and N.H. were adoptable and that the parent-child relationship exception to termination of parental rights did not apply. Regarding the sibling bond exception, the court noted that W.H. and N.H. had not lived with their half siblings for a "good portion" of their lives; they had "not shared significant common experiences," and their caregiver was willing to maintain the sibling relationship through visits. Finding the sibling bond exception inapplicable, the court terminated the parental rights to W.H. and N.H. and ordered adoption as the permanent plan.

## II. DISCUSSION

Mother contends the court erroneously refused to apply the sibling relationship exception to adoption preference. We find no error.

## A. Applicable Law

At a section 366.26 permanency planning hearing, the juvenile court determines a permanent plan of care for a dependent child. (*In re Casey D.* (1999) 70 Cal.App.4th 38, 50.) Permanent plans include adoption, guardianship, and long-term foster care. (*In re S.B.* (2008) 164 Cal.App.4th 289, 296.) Adoption involves terminating the legal rights of the child's natural parents, but guardianship and long-term foster care leave parental rights intact. (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 574.) "'Guardianship, while a more stable placement than foster care, is not irrevocable and thus falls short of the secure and permanent future the Legislature had in mind for the dependent child.' [Citation.]" (*In re Celine R.* (2003) 31 Cal.4th 45, 53.) Adoption, where possible, is the preferred permanent plan. (*In re Autumn H.*, *supra*, at p. 573.)

"Adoption must be selected as the permanent plan for an adoptable child and parental rights terminated unless the court finds 'a compelling reason for determining that termination would be detrimental to the child due to one or more of the following circumstances: [¶] . . . [¶] (v) There would be substantial interference with a child's sibling relationship . . . .' (§ 366.26, subd. (c)(1)(B).) '[T]he burden is on the party seeking to establish the existence of one of the section 366.26, subdivision (c)(1)

exceptions to produce that evidence.' [Citation.]" (*In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1314 (*Bailey J.*).)

"The sibling relationship exception applies where the juvenile court finds that 'substantial interference with a child's sibling relationship' is a 'compelling reason' to conclude that adoption would be detrimental to the child. In making this determination, the court should take into consideration 'the nature and extent of the relationship, including, but not limited to, whether the child was raised with a sibling in the same home, whether the child shared significant common experiences or has existing close and strong bonds with a sibling, and whether ongoing contact is in the child's best interest, including the child's long-term emotional interest, as compared to the benefit of legal permanence through adoption.' (§ 366.26, subd. (c)(1)(B)(v).)" (*Bailey J.*, *supra*, 189 Cal.App.4th at p. 1317.) The mere existence of a sibling relationship is not enough to apply the exception; the relationship must be "sufficiently significant" to cause detriment upon its termination; otherwise, there is "no substantial interference" with the sibling relationship. (*In re L. Y. L.* (2002) 101 Cal.App.4th 942, 952.)

"Moreover, even if a sibling relationship exists that is so strong that its severance would cause the child detriment, the court then weighs the benefit to the child of continuing the sibling relationship against the benefit to the child adoption would provide." (*In re L. Y. L., supra,* 101 Cal.App.4th. at pp. 952-953.)

## B.  Standard of Review

Appellate courts have traditionally applied either the substantial evidence test or the abuse of discretion test in considering challenges to juvenile court determinations of whether one or more of the statutory exceptions to adoption preference applies.  (*In re Scott B.* (2010) 188 Cal.App.4th 452, 469.)  There is little, if any, practical difference between the two.  (*Ibid.*)  As explained in *In re Jasmine D.* (2000) 78 Cal.App.4th 1339: "'[E]valuating the factual basis for an exercise of discretion is similar to analyzing the sufficiency of the evidence for the ruling. . . .  Broad deference must be shown to the trial judge.  The reviewing court should interfere only "'if [it] find[s] that . . . no judge could reasonably have made the order that he did.' . . .'"  [Citations.]"  (*Id.* at p. 1351.)

More recently, courts have applied a composite standard of review, recognizing that the determination whether an adoption exception applies entails both factual and discretionary determinations.  (*Bailey J., supra,* 189 Cal.App.4th at pp. 1314-1315 [substantial evidence standard applies to court's factual determination whether a beneficial relationship exists, and abuse of discretion standard applies to court's discretionary determination whether there is a compelling reason to apply the exception]; accord, *In re K.P.* (2012) 203 Cal.App.4th 614, 621-622; *In re J.C.* (2014) 226 Cal.App.4th 503, 530-531.)

## C.  Analysis

In considering the sibling bond exception, the trial court considered the prospective parent's intent to maintain contact between W.H. and N.H. and their older

siblings. Such consideration was appropriate. (*In re Daisy D.* (2006) 144 Cal.App.4th 287, 293; *In re Salvador M.* (2005) 133 Cal.App.4th 1415, 1422.) Here, the prospective adoptive parent was committed to ongoing sibling visitation as demonstrated by her facilitating sibling visits during the case. Mother's claims to the contrary are not supported by the record. Thus, she has failed to show that the termination of her parental rights would substantially interfere with W.H.'s and N.H.'s relationship with their siblings. (§ 366.26, subd. (c)(1)(B)(v).)

Additionally, the record demonstrates other reasons why the sibling bond exception does not apply. As the trial court observed, W.H. and N.H. had not lived with their siblings for a "good portion" of their lives, and they had "not shared significant common experiences." W.H. was 29 months old and N.H. was 16 months old when they were removed from mother's care. As such, their memories, if any, of events shared with their siblings are limited. W.H. and N.H. were toddlers who barely knew their half siblings. While mother places great weight on the excitement W.H. and N.H. expressed when visiting their siblings, such evidence merely shows that the siblings are good playmates, not that they are intensely bonded to each other.

Moreover, the best interests and long-term emotional interests of W.H. and N.H. are better served by adoption. (§ 366.26, subd. (c)(1)(B)(v).) At the time parental rights were terminated, W.H. was three years old and N.H. was two years old. Due to their young ages, they needed more care than their older half siblings. They quickly bonded with their caregiver, calling her mom. To impose a less permanent plan upon them

9

would expose them to 15 more years of foster care and possible placement changes. After parental rights are terminated, the objective is permanence and stability, best advanced through adoption. (*In re Marilyn H.* (1993) 5 Cal.4th 295, 309.)

In sum, the court reasonably determined there was no compelling reason to apply the sibling relationship exception.

## III.  DISPOSITION

The orders terminating parental rights and placing the W.H. and N.H. for adoption are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


HOLLENHORST
Acting P. J.

We concur:

MILLER
J.

CODRINGTON
J.

10