Filed 9/10/15  In re N.B. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re N.B. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E063310 |
| Plaintiff and Respondent | (Super.Ct.Nos. J251000 & J25100l) |
| v. | OPINION |
| A.G., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Cheryl C. Kersey, Judge.  Affirmed.

Jack A. Love, under appointment by the Court of Appeal, for Defendant and Appellant.

Jean-Rene Basle, County Counsel and Jamila Bayati, Deputy County Counsel, for Plaintiff and Respondent.

A.G., the mother of Niv.B., age two, and Nik.B., age three, appeals from a judgment terminating her parental rights, pursuant to Welfare and Institutions Code,[1] section 366.26. Mother lost custody of the children after an initial period of family maintenance services due to a drug relapse and her arrest for theft. Two months before the hearing pursuant to section 366.26, mother participated in online parenting and anger management classes, and filed a petition for modification of the prior order terminating services (§ 388), to be heard on the date of the 366.26 hearing. At the hearing, the court denied the section 388 petition and terminated parental rights. Mother appeals.

On appeal, mother argues that the order terminating parental rights must be reversed because the juvenile court erred in finding there was no beneficial parent-child relationship. We affirm.

## BACKGROUND[2]

The family first came to the attention of the San Bernardino County Children and Family Services (CFS) on August 8, 2013, upon a referral alleging the children, Niv.B., age 10 months, and Nik.B., age 22 months, had been physically abused and severely neglected. A social worker responding to the referral found no evidence of abuse, there was adequate food, and the children appeared to be safe with the parents. Two more

---

[1] All further statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

[2] Because father is not a party to this appeal, only limited references to him are provided, and only as necessary.

follow up visits led CFS to file a petition on behalf of the children based on the parents' admitted use of controlled substances.

Mother admitted she had a long history of using drugs, and tested positive for marijuana and methamphetamine. Mother also acknowledged she had been diagnosed with bipolar disorder and possible schizophrenia, for which she was not taking medication. The social worker provided the parents with drug referrals, but did not take the children into temporary custody because the children appeared safe. On September 3, 2013, CFS filed a dependency petition pursuant to section 300, subdivision (b), based on the parents' inability to provide regular care due to mental illness and substance abuse.

On October 1, 2013, the children were detained by CFS after both parents admitted using drugs and the children appeared unkempt. On November 4, 2013, at the contested jurisdictional/dispositional hearing, the court sustained the petition, declared the children to be dependents, removed custody from the father, but placed the children with their mother under a family maintenance plan.

On February 18, 2014, CFS filed supplemental petitions pursuant to section 387 on the grounds that the prior disposition of family maintenance had been ineffective in the protection of the children where mother had abused drugs, was arrested for shoplifting, and had used inappropriate discipline on Nik.B. The children were detained with a paternal uncle and his girlfriend. On April 2, 2014, the court found that the children came within the provisions of section 387 in that the previous disposition had

3

been ineffective in the protection of the minors, removed the children from mother's custody, and ordered the parents to participate in court ordered reunification services.

At the time of the six month review report, the prognosis for reunification was guarded because mother had relapsed and had only begun drug treatment in March 2014. Father had completed his service plan, but still lived with his mother. During visits, the children were happy to see mother, who played with them and brought food and snacks. Both parents were described as appropriate in their discipline of the children and changed their diapers when needed. At the six-month review hearing, the court found mother's progress was moderate, and extended reunification services.

On October 9, 2014, the social worker submitted a 12-month review report, in which CFS recommended terminating reunification services. Mother had a myriad of problems relating to her bipolar disorder and schizophrenia which led to conflicts with everyone in her life, and ultimately to discharge from her substance abuse program. She had not completed any services. Mother was also dishonest in reporting her progress in programs.

The social worker also noted that mother exercised poor judgment: she had a new boyfriend, by whom she was pregnant, and lived with the boyfriend along with his ex-girlfriend and the three children from that relationship. She also came to the CFS office for a meeting with her social worker bringing the 11-month old dependent child of another woman, whom mother claimed to be babysitting. The report observed that mother loved her children and wanted to reunify, but her poor impulse control made it

4

unlikely she would be able to care for three children, particularly since Nik.B. appeared to be autistic. Aside from commenting that mother visited weekly with the children, the social worker made no observations about the quality of the parent-child relationship.

On November 4, 2014, the court conducted the 12-month review hearing pursuant to section 366.21, subdivision (f), at which the court found by clear and convincing evidence that the parents had failed to regularly participate in the court ordered treatment plan, terminated reunification services, and set a selection and implementation hearing pursuant to section 366.26.

On February 20, 2015, the social worker submitted a report pursuant to section 366.26, recommending a permanent plan of adoption. By this time, both children were found to be developmentally delayed and Nik.B. was diagnosed with autism. Between November 4, 2014 and the date of the section 366.26 report, a period of about three months, mother had visited only twice. During visits, mother interacted with the children appropriately. However, there was a mutual attachment between the children and their adoptive parents, who were committed to adoption, and whom the children considered parent figures. Nik.B. cried when his uncle (the adoptive father) left for work in the morning.

On March 13, 2015, mother filed a petition requesting modification of the prior order pursuant to section 388. In the petition, mother alleged her circumstances had changed in that she was seeking therapy and psychiatric help, and she had obtained certificates for parenting education and anger management. By way of showing how the

5

proposed modification would be in the children's best interests, mother stated that the requested order would be better "for [the] child because the child belongs in mother's care."

Attached to mother's petition were exhibits: a page from a prescription pad of Exodus Recovery, Inc., on which a psychiatrist handwrote a memo indicating mother had undergone a psychiatric evaluation on March 8, 2015 at Exodus Urgent Care, she was pregnant, no medication was indicated at that time, and that after delivery, mother can pursue outpatient services. Also attached was a document indicating mother had enrolled in the Open Path Psychotherapy Collective online Parenting Skills course on March 4, 2015, and a certificate of completion of that course dated February 14, 2015, predating mother's enrollment. Additional documents reflected mother had enrolled in the Open Path Psychotherapy Collective online Anger Management course on March 4, 2015, and received a certificate of completion bearing the same date.

CFS filed a response recommending denial of the petition because there was no way to assess whether mother had learned any parenting or anger management skills from the online courses other than her conduct at the visits. As to mother's visits, the social worker had noticed no change in mother's approach to parenting or anger management. Mother's approach to parenting and anger management had resulted in stressful or uneasy moments with the children; mother became impatient with the children's need to go to the toilet, yelled at Niv. B. when the latter touched her phone, and grabbed Nik.B. aggressively by the wrist when he had an emotional outburst.

6

Mother still had not addressed her substance abuse, which was one of the main factors in the original intervention, and she had not submitted to random drug testing so it was not possible to determine if she was clean. The social worker acknowledged that the children appeared to have a bond with mother and the maternal great-grandmother, but noted they referred to mother by her first name, and called their caregivers "mom" and "dad."

On April 7, 2015, the court heard the section 388 petition and the section 366.26 hearing. The court found there was no change of circumstances and denied the request for modification. The court found by clear and convincing evidence that the children were adoptable and that mother had failed to establish a parent-child bond sufficient to override the permanency of adoption. Mother appealed.

## DISCUSSION

On appeal, mother argues that the juvenile court erred when it failed to apply the beneficial parent-child relationship exception to finding of adoptability, insofar as mother maintained regular contact with the children through weekly visitation, and it would be detrimental to terminate parental rights. We disagree.

Section 366.26, subdivision (c)(1), provides that if the court determines, based on the [adoption] assessment and any other relevant evidence, that it is likely the child will be adopted, the court shall terminate parental rights and order the child placed for adoption, unless one of several statutory exceptions applies. This reflects a statutory preference to terminate parental rights and order a child placed for adoption. (*In re C.B.*

(2010) 190 Cal.App.4th 102, 121.) Once the court determines a child is likely to be adopted, the burden shifts to the parent to show that termination of parental rights would be detrimental under one of the exceptions listed in section 366.26, subdivision (c)(1)(B). (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 809, citing *In re Lorenzo C.* (1997) 54 Cal.App.4th 1330, 1343-1345.)

Under section 366.26, subdivision (c)(1)(B)(i), parental rights cannot be terminated if the juvenile court finds a compelling reason for determining that termination of parental rights would be detrimental to the child because the parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship. (*In re C.B., supra,* 190 Cal.App.4th at pp. 123-124.) This section does not require proof the child has a "primary attachment" to the parent or that the parent has maintained day-to-day contact with the child. (*In re S.B.* (2008) 164 Cal.App.4th 289, 299.)

However, the exception applies only when the relationship with a natural parent promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents. (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575.) The determination of whether a beneficial parent-child relationship exists is reviewed for substantial evidence. (*In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1314.)

To overcome the preference for adoption and avoid termination of the natural parent's rights, the parent must show that severing the natural parent-child relationship

8

would deprive the child of a *substantial*, positive emotional attachment such that the child would be *greatly* harmed.  (*In re Angel B.* (2002) 97 Cal.App.4th 454, 466 [emphasis by court], citing *In re Lorenzo C., supra,* 54 Cal.App.4th at pp. 1332, 1342.)  The factors to be considered when looking for whether a relationship is important and beneficial are: (1) the age of the child, (2) the portion of the child's life spent in the parent's custody, (3) the positive or negative effect of interaction between the parent and the child, and (4) the child's particular needs.  (*In re Angel B., supra*, 97 Cal.App.4th at p. 467; see also, *In re Bailey J., supra,* 189 Cal.App.4th at p. 1315.)

Here, at the beginning of the dependency, mother visited regularly and the children were reported to share a bond with the parents.  However, during the four month period leading up to April 7, 2015, the date of the section 366.26 hearing, mother visited only twice.  This contradicts mother's testimony that she maintained regular weekly contact and visitation throughout the dependency period.  Mother failed to establish the first prong of the beneficial parent-child relationship exception.

As to the second prong, mother did not present any evidence that her relationship promoted the well-being of the children to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents.  Her testimony that the children called her "mom" must be considered in context, where it appears they also called their paternal uncle "dad," and the aunt "mom." Additionally, while mother indicated that in the past Nik.B. would be upset when the visits ended, currently the children did not get upset at the end of visits.

Considering the special needs of the children, their very young ages, and the commitment of the adoptive parents to meet their needs, we do not find that the mother-child relationship promotes the well-being of the children to such a degree as to outweigh the well-being they would gain through adoption. There is substantial evidence supporting the judgment terminating parental rights.

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.


We concur:

HOLLENHORST
J.

CODRINGTON
J.