Filed 9/29/15  In re A.E. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re A.E. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E063443 |
| Plaintiff and Respondent, | (Super.Ct.Nos. J255949 & J255950) |
| v. | OPINION |
| A.E., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Cheryl C. Kersey, Judge.  Affirmed.

Grace Clark, under appointment by the Court of Appeal, for Defendant and Appellant.

Jean-Rene Basle, County Counsel, and Dawn M. Messer, Deputy County Counsel, for Plaintiff and Respondent.

1

A.E. (Father) appeals an order terminating his parental rights to his children, A.E. and A.M.[1] He argues that at the hearing on termination of parental rights, he demonstrated that the beneficial parental relationship exception to the preference for adoption (Welf. & Inst. Code, § 366.26, subd. (c)(1)(B)(i))[2] applied and that the court erred in terminating his parental rights. We conclude that the court did not abuse its discretion and we therefore affirm the judgment.

FACTUAL AND PROCEDURAL HISTORY[3]

On August 7, 2014, seven-month-old A.E. reportedly fell off a bed onto a carpeted floor and sustained severe head trauma. The parents reported that the mother had just bathed A.E. and his three-year-old sister, A.M., and had placed A.E. on the bed. After putting a diaper on him, she turned away to get some pajamas. At that point, A.E. fell off the bed and began to cry. He then apparently suffered a seizure and stopped breathing. His paternal grandmother, who lived in the same home, performed CPR. Father called 911. Paramedics arrived and took the baby to the hospital. He was then transferred to Loma Linda University Medical Center. The doctor who examined him reported that his injuries were not consistent with injuries from such a fall but were consistent with the

---

[1] The children's mother is not a party to this appeal. Father is the children's presumed father.

[2] All statutory citations herein refer to the Welfare and Institutions Code.

[3] Portions of the history are taken from the record in Father's writ petition pursuant to rule 8.452(a) of the California Rules of Court. (*B.M. et al. v. Superior Court*, E062151.) We take judicial notice of the record in that case. (Evid. Code, § 452, subd. (d).)

baby having been shaken. The fall could have aggravated a preexisting brain injury. His injuries included extensive subdural hematomas on both sides of his head, "abnormal MRS with neuronal loss/dysfunction, and bilateral retinal hemorrhages." The parents denied having shaken him or knowing that anyone else shook him. Both parents later took polygraph tests. The results indicated deception.

A.M. was placed in a foster home, while A.E. remained hospitalized. Petitions pursuant to section 300 were filed as to both children, and the allegations were found true. At the disposition hearing, the parents were denied reunification services pursuant to section 361.5, subdivision (b)(6), based on the court's findings that A.E. had suffered severe physical harm and that reunification services would not be beneficial to the children. The court noted that neither parent acknowledged that A.E.'s injuries were nonaccidentally inflicted. The court also felt that the parents were both "rather cavalier" about the injuries, as if neither of them could "really feel meaningfully that the child was injured." The court ordered a hearing on termination of parental rights pursuant to section 366.26.

In December 2014, the children were placed with a paternal third cousin and her husband as prospective adoptive parents. The San Bernardino County Children and Family Services (CFS) recommended termination of parental rights and recommended

3

adoption by the prospective adoptive parents. A.E. was making progress in recovering from his injuries,[4] and both children were happy and comfortable in their placement.

The parents, who had visited regularly throughout the dependency proceedings, continued to visit consistently. The social worker observed that A.E.'s interactions with his parents were similar to his interaction with other adults and that he did not appear to have a strong attachment to his parents. He showed no distress at the end of visits. A.M. did have an established relationship with her parents, and she initially became upset when visits ended. However, this diminished over time, and she was eventually able to leave after a visit without becoming upset. The prospective adoptive parents reported that A.M. did not ask about her parents outside of visitation times.

On March 3, 2015, the parents filed a joint petition pursuant to section 388 seeking the return of the children to their care. The petition alleged that they had completed parenting classes and counseling. The juvenile court denied the petition without a hearing because the petition did not allege new evidence or a change in circumstances.

On April 13, 2015, Father filed a second section 388 petition seeking reunification services. The petition alleged that the mother had been arrested on March 19, 2015, for felony child abuse. Documentation concerning the criminal proceedings was attached. The petition alleged that Father had not arrested, and that only the mother was facing criminal charges. It alleged that she was the sole perpetrator of the conduct that caused A.E.'s injuries. The petition alleged that Father had visited the children regularly and

---

[4] The injuries appeared to have affected A.E.'s development, and he was referred to the Inland Regional Center for assessment.

consistently, that he felt substantially bonded to them and that he was able to provide a stable home for them. The court denied the petition without a hearing, again finding that the petition did not allege new evidence or a change in circumstances.

At the section 366.26 hearing, Father argued that the beneficial parental relationship exception to the statutory preference for adoption applied. He did not present any affirmative evidence in support of the exception. After hearing arguments, the juvenile court found the children adoptable and terminated parental rights.

LEGAL ANALYSIS

THE JUVENILE COURT DID NOT ABUSE ITS DISCRETION

IN FINDING THAT THE BENEFICIAL PARENTAL RELATIONSHIP

EXCEPTION DOES NOT APPLY

Father contends that because he established that the beneficial parental relationship statutory exception applied, the order terminating parental rights must be reversed. We disagree.

"Adoption must be selected as the permanent plan for an adoptable child and parental rights terminated unless the court finds 'a compelling reason for determining that termination would be detrimental to the child due to one or more of the following circumstances: [¶] (i) The parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship. . . .' (§ 366.26, subd. (c)(1)(B)[(i)].)" (*In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1314 (*Bailey J.*).) Under these provisions, "the court must order adoption and its necessary consequence, termination of parental rights, unless one of the specified circumstances provides a

5

*compelling* reason for finding that termination of parental rights would be detrimental to the child. The specified statutory circumstances . . . 'must be considered in view of the legislative preference for adoption when reunification efforts have failed.'" (*In re Celine R.* (2003) 31 Cal.4th 45, 53, italics added (*Celine R.*).) "'Adoption is the Legislature's first choice because it gives the child the best chance at [a full] emotional commitment from a responsible caretaker.'" (*Ibid.*)

The parent has the burden of establishing by a preponderance of the evidence that a statutory exception to adoption applies. (*Bailey J.*, *supra*, 189 Cal.App.4th at p. 1314.) The parent must show both that a beneficial parental relationship exists *and* that severing that relationship would result in great harm to the child. (*Id.* at pp. 1314-1315.) A juvenile court's finding that the beneficial parental relationship exception does not apply is reviewed in part under the substantial evidence standard and in part for abuse of discretion: The factual finding, i.e., whether a beneficial parental relationship exists, is reviewed for substantial evidence, while the court's determination that the relationship does or does not constitute a "compelling reason" (*Celine R.*, *supra*, 31 Cal.4th at p. 53) for finding that termination of parental rights would be detrimental is reviewed for abuse of discretion. (*Bailey J.*, at pp. 1314-1315.)

Rather than addressing whether the juvenile court's finding that the exception does not apply is supported by substantial evidence, Father argues, in effect, that substantial evidence supports the conclusion that a beneficial parental relationship *did* exist because he visited the children regularly and consistently, visitation was positive, he shared a bond with the children and the children would benefit from continuing the parent-child

relationship. However, because it is the parent who bears the burden of producing evidence of the existence of a beneficial parental relationship, it is not enough that the evidence would have supported such a finding, if it had been made; the question on appeal is whether the evidence *compels* such a finding as a matter of law. (*Bailey J.*, *supra*, 189 Cal.App.4th at p. 1314; *In re I.W.* (2009) 180 Cal.App.4th 1517, 1528.) As the court in *In re I.W.* discussed, when the trier of fact has expressly or implicitly concluded that the party with the burden of proof did not carry the burden and that party appeals, "it is misleading to characterize the failure-of-proof issue as whether substantial evidence supports the judgment." (*In re I.W.*, at p. 1528.) Rather, where "the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the [parent's] evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding [in the parent's favor].' [Citation.]" (*Ibid*.) Accordingly, unless the undisputed facts established the existence of a beneficial relationship as a matter of law, a substantial evidence challenge to this component of the juvenile court's determination cannot succeed. (*Bailey J.*, at p. 1314.) Here, Father has not demonstrated that the undisputed facts establish the existence of a beneficial relationship as a matter of law.

In any event, even if we assume that the evidence showed that a parental relationship exists which is of some benefit to the children, the ultimate question we must decide is whether the juvenile court abused its discretion by failing to find that

7

termination of parental rights would be so detrimental to either child as to overcome the strong legislative preference for adoption. The court must "determine the *importance* of the relationship in terms of the detrimental impact that its severance can be expected to have on the child and to weigh that against the benefit to the child of adoption." (*Bailey J.*, *supra*, 189 Cal.App.4th at pp. 1314-1315.) That decision is entrusted to the sound discretion of the juvenile court. (*Ibid.*) Here, the evidence Father cites is simply that he had a prior bond with the children and the children enjoyed visits with him, and that the mother was evidently the perpetrator of the injuries to A.E. There is no evidence that the bond between Father and the children was of such a nature that severance of the bond would be detrimental to the children. Consequently, we cannot say it was an abuse of discretion to fail to apply the exception.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


McKINSTER\
Acting P. J.

We concur:


KING\
J.


MILLER\
J.

8