Filed 10/22/15  In re Alondra J. A. CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re Alondra J. A., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B263899 (Super. Ct. No. J069303) (Ventura County) |
| HUMAN SERVICES AGENCY,     Petitioner and Respondent, v.  I. J.,     Defendant and Appellant. | |

       I.J., the biological father of Alondra J. A.,  appeals from a juvenile court order terminating his parental rights.  (Welf. & Inst. Code, § 366.26.)[1] Appellant contends that the trial court erred in finding that the beneficial parent-child relationship exception does not apply.  (§ 366.26, subd. (c)(1)(B)(i).)  We affirm.

*Facts and Procedural History*

       Alondra was born prematurely and hospitalized for three months due to a feeding aversion and failure to thrive condition.  A hospital nurse reported that the mother, B. A-A., and appellant had minimal contact with Alondra and did not comprehend the infant's special needs.  Before Alondra was released from the hospital, Ventura County Human Services Agency (HSA) investigated a report that

---

[1] All statutory references are to the Welfare & Institutions Code.

appellant fractured the clavicle of Alondra's 18 month old half brother. It was a concern because Alondra's mother had a domestic violence history and had not benefited from services in the past. When a hospital nurse talked about the importance of not shaking baby Alondra, the mother turned to appellant and said, "You are not going to be able to shake her . . . . " HSA was notified and placed Alondra in protective custody.

On June 25, 2013, the trial court sustained an amended petition for failure to protect (§300, subd. (b)) and abuse of a sibling (§ 300, subd. (j)). The trial court ordered reunification services, supervised visits, and mother's psychological evaluation. Alondra was placed in a special foster home to treat her fragile medical condition.

At the six month and 12 month review hearings, mother and appellant were no longer living together. A clinical psychologist reported that mother suffered from depressive disorder and bipolar disorder, and "does not seem capable of overcoming the cycle of violence and dependency she routinely manifests in intimate relationships with men." Mother missed supervised visits and was not taking her psychotropic medication or following her case plan. The trial court terminated mother's services at the 12 month hearing.

Appellant, on the other hand, was attending domestic violence and parenting classes and had been granted unsupervised visits. After the visits, Alondra was moody and irritable, and would not eat. The trial court reinstated supervised visits and terminated appellant's services at the 18 month review hearing.

On April 30, 2015, the trial court terminated parental rights and found that the parent-child beneficial relationship exception to adoption did not apply.

*Beneficial Parent-Child Relationship*

Appellant argues that the trial court erred in finding that the benefits of continuing the parent-child relationship do not outweigh the benefits of adoption.

2

(See *In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1314-1315.)  We review for substantial evidence and determine whether the trial court abused its discretion. (*Ibid.*)  "Because a parent's claim to such an exception is evaluated in light of the Legislature's preference for adoption, it is only in exceptional circumstances that a court will chose a permanent plan other than adoption.  [Citation.]"  (*In re Scott B.* (2010) 188 Cal.App.4th 452, 469.)

To establish the parent-child relationship exception, appellant must show that he maintained regular contact with Alondra.  (§ 366.26, subd. (c)(1)(B)(i).)  Once that is established, the burden is on appellant to demonstrate that Alondra will benefit from continuing the relationship and that it outweighs the benefits of adoption.  (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575.)  It is a two prong test.  "The exception applies only where the [trial] court finds regular visits and contact have continued or developed a significant, positive, emotional attachment from child to parent."  (*In re Casey D.* (1999) 70 Cal.App.4th 38, 50.)  Appellant must show that severing "the natural parent-child relationship would deprive [Alondra] of a *substantial,* positive emotional attachment such that the child would be *greatly* harmed. [Citations.]"  (*In re Angel B., supra,* 97 Cal.App.4th at p. 466.)

Appellant maintained regular contact but failed to show that Alondra will benefit from continuing the relationship. [2]  Appellant's relationship with two-year-old Alondra bears no resemblance to the sort of consistent, daily nurturing that marks a parental relationship.  (*In re Derek W.* (1999) 73 Cal.App.4th 823, 827.)

---

[2] Appellant's visitation record was good but less than stellar.  After reunification services were terminated, appellant missed four out of nine scheduled visits. Appellant and Alondra's mother continued to have contact despite a restraining order and prior incidents of domestic violence.   HSA reported that appellant was affectionate at visits, but "upon entering the visitation room there have been times that Alondra shows no reaction or response when she sees the father."

When offered unsupervised visits, appellant showed up with no car seat, food, water, or toys. Alondra threw up, refused to eat, suffered nightmares, and regressed. When supervised visits were reinstated, appellant tried to feed Alondra but the child made a vomit reflux and refused to open her mouth. After the visits, Alondra was moody and irritable, would not eat, and was exhausted.

Alondra's medical providers reported that feeding aversion is a learned behavior and that it was a medical concern. During a July 9, 2014 visit, appellant tried to feed Alondra in a high chair for 30 minutes, put her down to play, and followed her around with a spoonful of food. Alondra refused to open her mouth and tried to knock the spoon out of appellant's hand.

Appellant claims that Alondra enjoyed the visits but the relationship was more as a friend or a playmate than as a parent. (See e.g., *In re Brittany C.* (1999) 76 Cal.App.4th 847, 854.) The trial court found that pleasant visits are not enough and that appellant never assumed the role of a father. (See *In re Dakota H.* (2005) 132 Cal.App.4th 212, 229 ["parent must show more than frequent and loving contact, an emotional bond with the child, or pleasant visits"].)

The trial Court did not err. Alondra has never lived with appellant and is closely bonded to her foster mother who has cared for her the last 15 months. The foster mother is willing and ready to adopt and has closely monitored Alondra's medical needs which include physical and occupational therapy, speech therapy, and behavioral therapy to reduce anxiety symptoms. As a parent, appellant remains aloof and has little, if any, insight concerningAlondra's medical needs. He has attended only one of Alondra's 24 medical related appointments.

Based on Alondra's age and special needs, the trial court reasonably concluded that appellant's relationship with Alondra did not outweigh the permanency and stability of an adoptive placement that Alondra so badly needs. (*In re Angel* B. (2002) 97 Cal.App.4th 454, 468.) It is "a 'quintessentially' discretionary

4

decision" but not a close call. (*In re Bailey J.¸ supra,* 189 Cal.App.4th at p. 1315.) Adoption is in Alondra's best interests.

The judgment (order terminating parental rights) is affirmed.

<u>NOT TO BE PUBLISHED.</u>


YEGAN, J

We concur:


GILBERT, P.J.


PERREN, J.

Tari Cody, Judge

Superior Court County of Ventura

_____


Jamie A. Moran, under appointment by the Court of Appeal, for Appellant.


Leroy Smith, County Counsel, County of Ventura, Joseph J. Randazzo, Assistant County Counsel, for Respondent.