Filed 2/10/21  In re E.L. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re E.L., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E075816 |
| Plaintiff and Respondent, | (Super.Ct.Nos. J274072 & J274073) |
| v. | OPINION |
| T.L., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Steven A. Mapes, Judge.  Affirmed.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant.

Michelle D. Blakemore, County Counsel, Svetlana Kauper, Deputy County Counsel for Plaintiff and Respondent.

1

T.L. (Father) appeals the termination of his parental rights to C.L. (a boy, born Dec. 2016) and E.L. (a girl, born Nov. 2017; collectively, the Children) at a Welfare and Institutions Code section 366.26[1] hearing. Father contends the juvenile court erred by failing to apply the beneficial parent/child relationship exception of section 366.26, subdivision (c)(1)(B)(i) and adopting a lesser plan than adoption.

## FACTUAL AND PROCEDURAL HISTORY

### A. DETENTION

This family first came to the attention of San Bernardino County Children and Family Services (Department) when it filed a section 300 petition against C.F. (Mother) for C.L. C.L. and Mother had tested positive for methamphetamines when C.L. was born. The section 300 petition filed in March 2017 alleged that Mother suffered from substance abuse and mental health problems, which posed a substantial risk of abuse and neglect to C.L. C.L. remained in Father's custody throughout the dependency proceedings. At the jurisdiction/disposition hearing held on April 19, 2017, the juvenile court ordered that C.L. be removed from Mother's care due to Mother's substance abuse problems. Mother was granted reunification services. Father was named the presumed father and C.L. was to remain in Father's care under a family maintenance plan. The section 300 petition was dismissed on October 19, 2017, with Father being given sole legal custody of C.L. and Mother was granted visitation rights. Father was advised not to allow Mother to move in with him and C.L.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

In December 2017, it was reported to the Department that Mother had given birth to E.L., and E.L. tested positive for amphetamines and methamphetamines. E.L. had been in the hospital since her birth and required several surgeries. Mother had also tested positive for amphetamines and opiates at the time of E.L.'s birth. It was reported that Mother was living with Father. Father claimed he was unaware that Mother was abusing substances and that they were not living together. Mother was at Father's home when the Department detained the Children. The Children were placed in foster care. Father was granted supervised weekly two-hour visits.

On December 12, 2017, the Department filed section 300 petitions against Mother and Father (collectively, Parents) for the Children. A failure to protect was alleged against Parents pursuant to section 300, subdivision (b), based on Mother's substance abuse, and Father should have known about her substance abuse and that her substance abuse endangered the Children.

At the detention hearing, Mother named Father as the biological father of E.L. The Children remained detained in foster care.

B.    JURISDICTION/DISPOSITION REPORTS AND HEARING ON
        AMENDED SECTION 300 PETITIONS

A jurisdiction/disposition report was filed on January 10, 2018, for the section 300 petitions. It was recommended that the Children remain detained and that Parents be granted reunification services. It was recommended that the Children be placed with the paternal grandparents. Mother admitted to taking drugs only one time in April 2017. She acknowledged that she moved in with Father after the prior section 300 petition for C.L.

3

was dismissed. Father was interviewed on December 20, 2017. Father insisted Mother was attending AA meetings and consistently attending doctor's appointments during her pregnancy with E.L. Father believed Mother was allowed to live with him after the prior section 300 petition was dismissed. Father did not know that Mother was doing drugs and he was shocked that E.L. had tested positive.

The Children were placed with paternal grandparents on December 23, 2017. An addendum report was filed on February 27, 2018. It was recommended that the Children remain detained and that Parents receive reunification services. Mother reported on February 26, 2018, that about one month before, Father had been verbally and physically abusive with her. Law enforcement had been contacted but he was not arrested. Mother reported that Father had taken her phone, choked her and thrown a shoe at her. Father admitted throwing a shoe at Mother and that he took her cellular telephone. Mother had not pressed charges. He acknowledged they could not live together.

The Department filed amended section 300 petitions for the Children on April 10, 2018, adding the allegation of domestic violence. The Children remained in the care of paternal grandparents.

According to the amended detention report, Mother reported that Father had been abusing her. She had marks on her arm. Mother claimed to have also seen text messages between Father and a 12-year-old girl discussing sex. Father contacted the Department and reported that Mother had relapsed. Father was seeking a restraining order against Mother. Mother started a 90-day inpatient substance abuse program on April 9, 2018.

4

The jurisdiction/disposition hearing on the amended section 300 petitions was conducted on April 11, 2018. Parents filed a waiver of rights submitting on the amended section 300 petitions. Father was named the presumed father of the Children. The juvenile court found the allegations in the amended section 300 petitions true. The Children remained detained with paternal grandparents. Parents were granted reunification services.

C.      SUPPLEMENTAL PETITIONS PURSUANT TO SECTION 387

Counsel for the Children filed a section 388 petition on July 6, 2018, seeking removal of minors from paternal grandparents. On June 20, 2018, Father had been arrested at the paternal grandparent's home for possession of child pornography. It had been reported that Father had unsupervised visits with the Children in the paternal grandparent's home. Counsel for the Children also sought to have visits between the minors and Father be found detrimental and terminated.

On July 10, 2018, the Department filed supplemental petitions pursuant to section 387 for the Children. It was alleged against the paternal grandparents that they failed to protect the Children by allowing Father in their home and that they should have known that the minors were at risk due to criminal charges against Father for possessing child pornography.

The detention report for the supplemental section 387 petition recommended that the Children be placed in a foster home. Father had been arrested for possession of obscene material and soliciting sex with a minor. Paternal grandparents had allowed Father unauthorized visits with the Children in their home. They also had bailed Father

5

out of jail.  The paternal grandparents believed that Mother downloaded the child pornography onto Father's phone and was setting him up.

At the hearing on the supplemental petition, Father was allowed continued visitation one time each week for two hours but it was to be closely supervised by the Department.  The juvenile court approved the removal of the Children from paternal grandparents and they were moved to a foster home.

A jurisdiction/disposition report was filed on August 20, 2018, for the section 387 supplemental petitions.  The Children had been moved to the foster home of Ms. L.  A search of Father's residence was conducted after his arrest at the grandparent's home.  Father confessed he had downloaded 300 images of child pornography on to one file and another 100 images to another file.  The images included sexually explicit images and sexual acts performed by adults on girls who appeared as young as four to six years old.  He also admitted that he had asked a 12-year-old girl to send him a naked picture of herself and engaged in sexualized conversation with her.  During the search, photographs of Father wearing a diaper were found.  Father told the police that he had a porn addiction, which led him to download the images.

Paternal grandparents insisted that Father was innocent.  They blamed Mother for all the problems.  Father had been visiting with the Children one time each week for two hours and there were no concerns regarding the visits.  At a hearing on August 22, 2018, the Children were removed from the care of paternal grandparents.  The allegations in the supplemental 387 petitions were found true.  Father was allowed weekly visits but he was

6

to be closely supervised, was not allowed to change diapers, and was not allowed to bring his cellular telephone.

### D.     SECTION 342 PETITIONS FILED AGAINST FATHER

On September 4, 2018, the Department filed supplemental petitions for the Children.  The Department alleged pursuant to section 300, subdivision (b), that Father was arrested for possession and viewing child pornography and soliciting sex from a minor on the Internet, which posed a risk of harm and neglect to the Children; and pursuant to section 300, subdivision (d), that the Children had been sexually abused or were at substantial risk of being sexually abused.  The factual basis for the new allegation was as detailed in the section 387 petition that Father possessed child pornography and had sexually explicit text conversations with a 12-year-old girl.  Father continued to have visits each week with the Children and there were no concerns reported.  The Children were ordered detained and to remain in the home of Ms. L.

On October 9, 2018, a jurisdiction report was filed for the subsequent section 342 petitions.  It was recommended that the allegations be found true and that reunification services for Father be terminated.  Father advised the Department that Mother had downloaded the pornographic images found in his phone and sabotaged him because Mother was afraid that Father was going to get custody of the Children back.  He denied that he admitted anything to the police.  Mother denied that she downloaded the images on Father's phone.

A status review report was also filed for the section 300 petitions.  It was recommended that Father's reunification services be terminated.  Father had made some

7

progress in his case plan but his arrest for possession of child pornography and the resulting criminal charges demonstrated he had not benefitted from services. The Children were doing well in the foster home of Ms. L. C.L. appeared to be close to Father.

The juvenile court set the matter for a combined jurisdiction/disposition hearing on the supplemental petitions and status review hearing on the section 300 petitions. The Department was concerned that Father was aware one of the Children had diaper rash. The Department admitted that the previous court order of strict supervision of Father during visits may not have been followed. On October 17, 2018, the Children were moved to the foster home of Mr. and Mrs. L.

An addendum report was filed on November 20, 2018. It was recommended that the allegations in the section 347 petition be found true and that the court terminate reunification services for Father. Father continued to blame Mother for placing the child pornography images on his phone. He had no explanation for the charge of texting a 12-year-old girl. However, Father also claimed to have a sex addiction and that he should not have to go to prison. He denied his addiction posed a risk of harm to the Children. The Department had serious concerns about Father given the extensive collection of child pornography in his possession and that it could lead to sexual offending. Both minors were developing normally. Father was consistent in his visitation. He brought toys and snacks to the supervised visits.

The Department received the full police reports regarding Father's arrest. The images were reviewed and contained photographs of naked children in sexually explicit

poses. The police report confirmed that Father admitted downloading the images. The police report also detailed the text conversation between Father and the girl who stated she was 12 years old. It included photographs he sent her of a young girl showing her vagina and him asking if the pictures were of her.

At the hearing held on January 29, 2019, over Father's objections but without presenting any affirmative evidence, the juvenile court found the allegations in the section 342 petition against Father true. It was determined that continued visitation between Father and the Children was harmful and was terminated. Mother was given continued reunification services; Father's reunification services were terminated.

The foster family provided an update for the Children on May 24, 2019. They were adjusting well to the new home. E.L. was delayed in her motor skills and language but was getting help. C.L. was thriving and had no developmental concerns. The foster family wanted to pursue adoption.

A status review report was filed on June 4, 2019. The Department recommended that reunification services be terminated for Mother and that a section 366.26 hearing be set with a permanent plan of adoption with the current foster family. C.L. was two years old and E.L. was one year old. Mother had not submitted any evidence that she was attending AA meetings as required by her case plan. She had failed to show for 10 drug tests. Mother was argumentative and failed to cooperate with the Department. Mother was pregnant.[2]

---

[2] Mother gave birth to N.K. in July 2019, but Father was not the father and he is not part of that dependency proceeding.

9

Further interim reports and addendums recommended reunification services be terminated for Mother and that a section 366.26 hearing be set. Mother continued to have trouble submitting documentation of drug tests and participation in other services. The Department was also concerned as it had been reported that Mother had been seen with Father.

On October 10, 2019, the juvenile court terminated Mother's reunification services and set the matter for a section 366.26 hearing. Mother had a relapse and she was still seeing Father.

E.      SECTION 366.26 REPORT

On November 20, 2019, the Department reported that Mother had been disclosing information about the foster parents on social media. The foster parents were concerned about their safety and were seeking a restraining order. Mother's visits were reduced to monthly. The foster parents requested de facto parent status for the Children, which was granted.

The section 366.26 report was filed on January 30, 2020. The Children were thriving in the foster/prospective adoptive home. The prospective adoptive family had help from family and planned to keep the Children in touch with the maternal grandparents. The Department recommended that parental rights be terminated and that the Children be freed for adoption.

The matter was continued several times pursuant to Government Code section 68115, an emergency order allowing for continuance due to the Covid-19 pandemic. An

update was provided by the Department on September 2, 2020. The Children were integrated into the prospective adoptive home and were bonded with the adoptive parents.

F.      SECTION 366.26 HEARING

The section 366.26 hearing was conducted on September 22, 2020. Father was present. Mother testified but Father presented no affirmative evidence. Father objected to the termination of parental rights and requested a lesser permanent plan for the Children. Father had a bond with C.L., who he cared for during the first year of C.L.'s life. During the few visits he had with E.L., he developed a bond with her. He could develop a strong bond if he was granted visitation. The juvenile court noted as to Father that "Obviously, we have the detriment finding for him, so he doesn't meet the first prong." The juvenile court also found neither parent occupied a parental role. The juvenile court concluded, "I find the benefits of adoption outweigh the benefits of maintaining a parent-child relationship. Therefore, I will terminate parental rights for all the children."

Father's parental rights to the Children were terminated and they were freed for adoption.

**DISCUSSION**

A.      NOTICE OF APPEAL

The Department claims the notice of appeal filed by Father was deficient as he signaled he was appealing from the dispositional order removing the Children from his custody pursuant to section 360, subdivision (d), for which the time for filing an appeal

11

had long since passed.  Additionally, he did not identify that he was appealing the termination of parental rights after the section 366.26 hearing.

Father's notice of appeal (Judicial Council Forms, form JV-800) was filed on September 22, 2020.  Under the heading, "The order appealed from was made under Welfare and Institutions Code (*check all that apply*)," Father checked the box "Section 360 (declaration of dependency)" and the box "Removal of custody from parent or guardian."  Father stated that the date of the hearing was on September 21, 2020.  Father did not indicate on the notice that he intended to appeal from the order entered September 22, 2020, made at the section 366.26 hearing terminating his parental rights.

" 'Section 395 provides in pertinent part that "[a] judgment in a proceeding under Section 300 may be appealed in the same manner as any final judgment, and any subsequent order may be appealed as an order after judgment." ' " (*In re J.F.* (2019) 39 Cal.App.5th 70, 74 (*J.F.*).)  "In addition, 'the timely filing of an appropriate notice of appeal or its legal equivalent is an absolute prerequisite to the exercise of appellate jurisdiction.' " (*Ibid.*)

"Generally, we must liberally construe a notice of appeal in favor of its sufficiency.  [Citation.]  A notice of appeal shall be ' "liberally construed so as to protect the right of appeal if it is reasonably clear what [the] appellant was trying to appeal from, and where the respondent could not possibly have been misled or prejudiced." ' " (*J.F.*, *supra*, 39 Cal.App.5th at p. 75; see also *In re Joshua S.* (2007) 41 Cal.4th 261, 272.)  "The policy of liberally construing a notice of appeal in favor of its sufficiency [citation] does not apply if the notice is so specific it cannot be read as reaching a judgment or

order not mentioned at all." (*Filbin v. Fitzgerald* (2012) 211 Cal.App.4th 154, 173.) " ' "[W]here several judgments and/or orders occurring close in time are separately appealable . . . , each appealable judgment and order must be expressly specified—in either a single notice of appeal or multiple notices of appeal—in order to be reviewable on appeal." ' " (*Ibid.*)

Here, the notice of appeal was filed the same day as the hearing on the section 366.26 hearing. Despite this, Father, who filled out the notice of appeal on his own, checked the box pertaining to removal of the minors from his custody, which occurred on April 11, 2018, at the disposition hearing. The time for appealing this order had long since passed. Father also provided the date of September 21, 2020, which was neither the date of the removal nor the date of the section 366.26 hearing. Hence, the notice of appeal was not clear as to the basis of Father's appeal.

However, since the notice of appeal was filed on the same day as the section 366.26 hearing, and it was timely as to the termination of parental rights and the permanent plan of adoption, we will liberally construe the notice of appeal to include an appeal from the section 366.26 hearing. (See *In re Madison W.* (2006) 141 Cal.App.4th 1447, 1450 [allowing appeal of section 388 denial, which was not designated on notice of appeal in part because the time to appeal the section 388 petition had not expired].)[3] The Department also has not shown that it was prejudiced by the error on the notice of appeal.

---

[3] In *J.F.*, *supra*, 39 Cal.App.5th 70, another court in this division found that the notice of appeal from the termination of parental rights, which did not include that the parent was also appealing the denial of the section 388 petition, would not be liberally

*[footnote continued on next page]*

13

B.    PARENTAL BOND EXCEPTION

Father claims he had a significant bond with C.L., and a bond with E.L., and that the juvenile court erred by failing to apply the parental bond exception of section 366.26, subdivision (c)(1)(B)(i).

" 'The objective of the dependency scheme is to protect abused or neglected children and those at substantial risk thereof and to provide permanent, stable homes if those children cannot be returned home within a prescribed period of time.' [Citation.] When the child is removed from the home, the court first attempts, for a specified period of time, to reunify the family.' " (*In re Celine R.* (2003) 31 Cal.4th 45, 52.) After reunification services are denied or terminated, " 'the focus shifts to the needs of the child for permanency and stability.' " (*Ibid*.) Adoption is preferred once reunification services have been terminated and, "adoption should be ordered unless exceptional circumstances exist." (*In re Casey D.* (1999) 70 Cal.App.4th 38, 51.)

Under section 366.26, subdivision (c)(1), the juvenile court must terminate parental rights if it finds "by clear and convincing evidence" it is likely the child will be adopted. There are several statutory exceptions. Under section 366.26, subdivision (c)(1)(B)(i), one such exception exists where "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the

---

construed to allow the parent to appeal the denial of the section 388 petition. (*J.F.*, at pp. 75-79.) This case is distinguishable because Father included a date on the notice of appeal that more closely coincided with the section 366.26 hearing. Further, the section 388 denial in *J.F.* was entered 44 days prior to the filing of the notice of appeal rather than here, where it was filed one day after the hearing.

14

relationship." A beneficial relationship is established if it " 'promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents.' " (*In re Brandon C.* (1999) 71 Cal.App.4th 1530, 1534.)

The parent has the burden of proving the statutory exception applies. (*In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1314.) The parent must show both that a beneficial parental relationship exists and that severing that relationship would result in great harm to the child. (*Ibid*; see also *In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1350.) " 'A biological parent who has failed to reunify with an adoptable child may not derail adoption merely by showing the child would derive some benefit from continuing a relationship maintained during periods of visitation with the parent. [Citation.] A child who has been adjudged a dependent of the juvenile court should not be deprived of an adoptive parent when the natural parent has maintained a relationship that may be *beneficial to some degree*, but that does not meet the child's need for a parent.' " (*In re Jason J.* (2009) 175 Cal.App.4th 922, 937.)

We review the juvenile court's findings on the existence of the beneficial parental relationship for substantial evidence. (*In re Bailey J.*, *supra*, 189 Cal.App.4th at p. 1314.) Whether "the relationship is a 'compelling reason' for finding detriment to the child" is a " 'quintessentially' discretionary decision" that we review for abuse of discretion. (*Id.,* at p. 1315.)

There is no doubt that Father was a big part of C.L.'s life for C.L.'s first year as the sole caregiver. However, Father never had custody of E.L. Father had weekly two-

15

hour supervised visits with the Children between December 2017 and August 2018. After that time, his visits were closely supervised by the Department due to Father being found in possession of graphic child pornography, which he admitted to downloading. Visits continued until there was a concern that Father may have not been closely supervised as he was aware that one of the minors had a diaper rash. Further, the Department received the police reports that detailed the explicit nature of the child pornography possessed by Father. Father was terminated from visiting with the Children on January 29, 2019. The section 366.26 hearing was conducted on September 22, 2020, which was over 19 months since Father had last visited with the Children. As found by the juvenile court, Father could not meet the first prong of the parental bond exception because he had not been consistent in his visitation due to his own criminal activity.

Admittedly there was some type of bond between C.L. and Father. The Department reported that C.L. appeared close to Father. Father brought toys and snacks to the visits with the Children. However, there was no evidence of a bond that was so strong that the Children should be deprived of the stability of being placed in an adoptive home. The Children did not have to be deprived of a permanent and stable home to allow Father some sort of possible visitation in the future. The Children were thriving with the prospective adoptive family. Father's future was uncertain. As noted, adoption is preferred once reunification services have been terminated and, "adoption should be ordered unless exceptional circumstances exist." (*In re Casey D.*, *supra*, 70 Cal.App.4th at p. 51.) This is not the extraordinary case that warrants a lesser placement plan. The trial court did not abuse its discretion by freeing the Children for adoption.

16

## DISPOSITION

The juvenile court's order terminating Father's parental rights and freeing the Children for adoption is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER

Acting P. J.

We concur:

SLOUGH

J.

FIELDS

J.